IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| U.S. SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>**SEBASTIAN SILEA, CHRISTIAN KRANENBERG, AND KS CARTEL LLC,**<br><br>Defendants. | Civil Action No.:<br>4:20-cv-00737-SDJ<br><br>JURY TRIAL DEMANDED |

## FIRST AMENDED COMPLAINT

Plaintiff United States Securities and Exchange Commission (the "Commission"), pursuant to Fed. R. Civ. P. 15(a)(1), files this First Amended Complaint and alleges:

## NATURE OF THE ACTION

1. From approximately 2017 through at least January 2020, Defendants Sebastian Silea and Christian Kranenberg fraudulently raised over $1.1 million from at least 46 investors by offering unregistered securities in the form of membership units in KS Cartel LLC ("KS Cartel"), an entity that Silea and Kranenberg formed and controlled (collectively, Silea, Kranenberg, and KS Cartel are "Defendants").

2. Silea and Kranenberg, who held themselves out to prospective investors as "highly qualified business and industry professionals," represented that proceeds from the KS Cartel offering would be used, at the investor's election, either to day-trade funds pooled from multiple investors through a so-called "mutual fund" or to manage separate "private stock portfolios" for individual investors.  Silea and Kranenberg also guaranteed that investors would not lose more

than 50 percent of their initial investments and claimed that investors should expect 20-30 percent returns *per month*.

3. In fact, Defendants used only a fraction of the invested funds for trading. They used most of the invested funds for undisclosed personal expenditures and for payments of purported "profits" to investors on their investments in KS Cartel. The "profit" payments were sourced not from any gains in trading, but from money others invested in KS Cartel. To further their deceit, Silea and Kranenberg fabricated and disseminated to investors bogus account statements that purported to show that the distributions to investors were "profits."

4. And, Silea and Kranenberg were neither highly qualified nor industry professionals. They were 20-year-olds who had no financial industry experience or track record in securities trading. They had no basis to project the claimed returns (which they failed to deliver), and their promise of downside protection (which they took no steps to achieve) was illusory. The trading conducted by Silea and Kranenberg was unprofitable.

5. Ultimately, Silea and Kranenberg squandered most of the investor funds on unprofitable trading, personal expenditures, and payments of fictitious profits to investors that served only to perpetuate their fraud.

6. Through their actions, Defendants violated, and unless enjoined will continue to violate, the antifraud and securities-registration provisions of the federal securities laws, namely Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)].

7. To protect the public from further fraudulent activity, the SEC brings this action against Defendants and seeks: (a) permanent injunctive relief, (b) disgorgement of ill-gotten gains, plus prejudgment interest, and (c) civil penalties.

## DEFENDANTS

8. **Christian Kranenberg**, age 22, resides in Waco, Texas. Kranenberg is Chief Executive Officer ("CEO"), equity owner, and one of two managing members of KS Cartel. Prior to forming KS Cartel, Kranenberg was a student at a community college in Frisco, Texas. At all relevant times, Kranenberg controlled KS Cartel.

9. **Sebastian Silea**, age 22, resides in Waco, Texas, and resided in Frisco, Texas during the relevant time period. Silea is Vice President, Chief Financial Officer ("CFO"), equity owner, and one of two managing members of KS Cartel. Prior to forming KS Cartel, Silea was a university student in Waco, Texas for one semester. At all relevant times, Silea controlled KS Cartel.

10. **KS Cartel** is a limited liability company formed in Texas. At all relevant times, its principal place of business was Waco, Texas. At all relevant times, Silea and Kranenberg controlled KS Cartel and were the only persons to exercise such control.

## JURISDICTION AND VENUE

11. The Commission brings this action pursuant to authority conferred upon it by Sections 20(b) and 20(d) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77t(b) and 77t(d)] and Sections 21(d) and 21(e) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78u(d) and 78(u)(e)].

12. The Defendants offered and sold membership units in KS Cartel to investors. These membership units are investment contracts, which are securities under Section 2(a)(1) of the

Securities Act [15 U.S.C. § 77b] and Section 3(a)(10) of the Exchange Act [15 U.S.C. § 78c]. Further, the Defendants represented that they would use investor funds to trade stocks, which are expressly identified as securities under Section 2(a)(1) of the Securities Act and Section 3(a)(10) of the Exchange Act.

13. This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 US.C. § 77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), (e), and 78aa].

14. In connection with the conduct described in this First Amended Complaint ("Complaint"), Defendants, directly or indirectly, made use of the mails or the means or instruments of transportation or communication in interstate commerce.

15. Venue is proper in this District because Silea resided in this District during the relevant time period and at least some of the investors in KS Cartel reside in this District. Further, acts, transactions, and courses of business constituting violations of the securities laws alleged in this Complaint occurred within this District, including but not limited to solicitations of investors (by marketing materials, telephone, and in-person) and acceptance of investment proceeds.

## FACTUAL ALLEGATIONS

**I.    Silea and Kranenberg Form KS Cartel and Offer its Membership Units to Investors**

16. Silea and Kranenberg are longtime friends who grew up together in Collin County, Texas. In late 2016, Silea attended a university in Waco, Texas and Kranenberg attended a community college in Frisco, Texas. In or about late 2016 or early 2017, Silea and Kranenberg decided to pool their savings from part-time jobs, as well as an inheritance that Kranenberg had recently received, to day-trade stocks.

17. In or around mid-2017, Silea and Kranenberg decided to raise money from investors to day-trade. In July 2017, they formed KS Cartel as the vehicle through which they would raise money from investors and conduct day-trading activities. Silea and Kranenberg each decided to pursue the KS Cartel business full-time.

18. To offer membership units in KS Cartel to prospective investors, Silea drafted a Confidential Private Offering Memorandum (the "PPM") based on a template he located through an internet search. Kranenberg reviewed the PPM, approved of its use to solicit investors, and signed (as managing member) the KS Cartel limited liability company operating agreement attached as an exhibit to the PPM. Silea also signed the KS Cartel limited liability company operating agreement.

19. Defendants used the PPM to market to investors an opportunity to invest in an offering of membership units of KS Cartel. The offering sought to raise a minimum of $1 million, with each membership unit priced at $1,000. According to the PPM, KS Cartel would use the proceeds from the offering to trade securities and would split any profits from the trading with investors, with the precise profit split to be negotiated with each investor.

20. Silea and Kranenberg solicited and offered KS Cartel membership units to friends, family, and persons with whom they had no prior relationships. Silea and Kranenberg used a LinkedIn page to promote KS Cartel's business and to correspond with and solicit prospective investors. Silea also solicited investors by, among other methods, handing out KS Cartel business cards to complete strangers, at least one of whom ultimately invested in the offering.

21. Silea and Kranenberg met with prospective investors, sometimes together and at other times separately. During these meetings, Silea and Kranenberg discussed with investors the terms of the investment, projected returns, and their purported track record in day-trading stocks.

22. In sum, Silea and Kranenberg used these meetings and other means described above to offer and sell KS Cartel membership units to investors. The membership units KS Cartel offered were not registered with the Commission.

23. While some investors invested relatively small amounts, others invested tens of thousands of dollars. Some of the investors in the KS Cartel offering lacked financial sophistication, and neither Silea nor Kranenberg took reasonable steps to verify that the investors in the KS Cartel offering were accredited investors.

24. To facilitate KS Cartel's business, Silea and Kranenberg opened – and had access to and control over – bank accounts for KS Cartel and brokerage accounts for KS Cartel and Kranenberg. Despite opening a brokerage account in the name of KS Cartel, Defendants conducted the majority of the securities trading on behalf of investors through Kranenberg's personal brokerage accounts. While Silea was primarily responsible for KS Cartel's trading, Kranenberg traded as well.

## II. The Defendants Market and Operate KS Cartel in Deceitful Ways

25. As detailed below, Defendants deceived investors at every turn. They solicited investments based on false statements and baseless projections, used investors' funds as their personal piggy bank and to perpetuate the fraud on investors, and misled investors to believe that their investments were profitable.

### A. *Deceitful Marketing of the KS Cartel Offering*

26. To lure investors to invest in KS Cartel, the PPM stated that Silea and Kranenberg had "expertise" that gave KS Cartel a competitive advantage and that they were "highly qualified business and industry professionals." These statements were false because Silea and Kranenberg had no cognizable expertise in trading securities, were not highly qualified in this field, and were

not industry professionals.  In fact, Silea and Kranenberg held no degrees, certifications, or licenses in the financial services field.  They withdrew from college to focus on KS Cartel full-time, and their prior jobs were as a waiter and a pizza delivery person, neither of which provided financial-services or investment-related experience.

27. In marketing the KS Cartel offering, Silea told several investors that he had an excellent trading history.  This statement was false because Silea's trading had been unprofitable.

28. Defendants offered investors a choice of two trading strategies that KS Cartel would pursue for investors using proceeds from the offering.  The first option was what Defendants called a "mutual fund of clientele funds."  As Silea and Kranenberg verbally represented to prospective investors, "mutual fund of clientele funds" referred to pooling funds together from all investors and deploying these funds in a day-trading strategy.  The second option was what Defendants called a "private stock portfolio funded for an individual (client) who does not want to take part of the mutual fund."  According to Silea and Kranenberg's statements to investors, "private stock portfolio" referred to segregated investor accounts in which KS Cartel would deploy a long-term "buy and hold" trading strategy with respect to specific equity securities.

29. Defendants – through the PPM and in conversations with investors – misrepresented the trading strategies available to investors.  In fact, when investors chose the "private stock portfolio" option, Defendants neither segregated the investor funds nor executed a "buy and hold" trading strategy.  Instead, Silea and Kranenberg caused KS Cartel to comingle funds of investors who chose the "private stock portfolio" option with funds from investors who chose to participate in the "mutual fund" day-trading strategy, and pursued only the day-trading strategy for the "private stock portfolio" investors.

30. The PPM also touted targeted growth rates for the two trading strategies that were baseless and unsupported. The PPM projected astounding growth rates of 20 percent *per month* for the "mutual fund" investment option and 30 percent *per month* for the "private stock portfolio option." These projections were materially misleading because Defendants lacked any reasonable basis to project such returns. Silea's trading on behalf of himself and Kranenberg prior to accepting investors' money for KS Cartel was unprofitable, and Silea's trading on behalf of KS Cartel also had been unprofitable during the time that Silea and Kranenberg distributed the PPM to prospective investors.

31. The PPM also misrepresented that investors would enjoy the protection of a "safety net" that guaranteed that investors would see a return of at least 50 percent of their principal investments. However, Silea and Kranenberg lacked any reasonable basis to guarantee that investors' losses could be limited to 50 percent of their principal investments and, further, they took no actions consistent with such a guarantee. During the time period that Silea and Kranenberg distributed the PPM to prospective investors and while operating KS Cartel, the Defendants made no provisions for a 50 percent "safety net." For example, Silea and Kranenberg did not cause KS Cartel to set aside any funds to satisfy any part of the "safety net" obligation, did not hedge their trading, and did not take out any form of insurance. As Silea put it, Defendants' only plan to ensure the 50 percent "safety net" was "not making bad investments." Ultimately, many investors have lost more than 50 percent of their initial investments.

32. Further, the PPM misrepresented how proceeds from the offering would be used. The PPM stated that the offering proceeds would be used to trade in securities based on the strategies that investors selected. This statement was false, or at the very least materially misleading, because, as described in more detail below, Defendants used much of the offering

8

proceeds for uses other than trading, including personal expenses and payments of purported "profits" to investors.

33. From July 2017 through January 2020, Silea and Kranenberg raised at least $1.1 million by selling KS Cartel membership units to at least 46 investors across at least five states.

B. *Deceitful Operation of KS Cartel*

34. Silea and Kranenberg fraudulently operated KS Cartel in at least two ways: first, by using proceeds of the offering in a manner contrary to representations that they made verbally to investors and in the PPM, and second – and relatedly – by deceiving investors about the performance and profitability of the trading (and by extension, their investments) and the source and nature of purported profits that KS Cartel paid to investors.

35. The PPM represented that KS Cartel would transfer the funds invested through the offering to a KS Cartel brokerage account to be traded in accordance with the described trading strategies. This statement was false, misleading, and contrary to how Silea and Kranenberg actually operated KS Cartel.

36. At all relevant times, including during the time period that Silea and Kranenberg distributed the PPM to prospective investors, KS Cartel diverted a substantial majority of the offering proceeds to pay Silea and Kranenberg's personal expenditures and to make distributions of purported "profits" to investors.

37. The PPM represented that Silea and Kranenberg would each receive a salary of $12,000 per year, paid monthly. Yet, Silea and Kranenberg used at least $175,000 of the offering proceeds for personal expenses incurred over just 18 months. These personal expenses, which were charged by both Silea and Kranenberg, included, among other things, purchase of a luxury

car, payments for rent and utilities of Kranenberg's apartment, and retail and department store purchases.

38.     The PPM disclosed that Silea and Kranenberg could increase their salary based on materialization of certain business conditions.  However, none of the conditions permitting an increase in salaries ever materialized.

39.     Further, Silea and Kranenberg withdrew in cash nearly $360,000 of investor funds from the KS Cartel bank account.  On information and belief,[1] little, if any, of this money was used to trade or for other KS Cartel business purposes.

40.     In fact, KS Cartel transferred only approximately one-third of the offering proceeds to brokerage accounts, and even of those funds, KS Cartel used only a fraction for trading securities.

41.     The securities trading in which KS Cartel did engage generated losses, not profits.

42.     In addition to misusing investor funds for personal purchases and non-business-related cash withdrawals, KS Cartel used just over half of the offering proceeds (approximately $572,000) to pay purported "profits" (returns) to investors.  That is, KS Cartel used money invested by some investors to pay fictitious "profits" to other investors.

43.     Receiving these "profit" payments led investors to believe that KS Cartel was trading profitably and that their investments in KS Cartel were earning a return based on that trading success.  Indeed, the PPM represented that KS Cartel would distribute to investors "profit" from the securities trading activity based on a split negotiated with each client.  In reality, and as alleged above, holders of membership units of KS Cartel did not actually earn any returns on their investments, as KS Cartel's trading was unprofitable and much of the offering proceeds were in

---

[1] During the Commission's underlying investigation that preceded the filing of this lawsuit, Defendants refused to produce documents in response to subpoenas and otherwise attempted to obstruct the Commission's investigation.

any event diverted toward uses that could not have generated any return for investors and, in fact, were squandered.

44. To deceive investors and perpetuate their fraud, Defendants provided fictitious account balances to at least certain investors. KS Cartel, through Silea and Kranenberg, provided this information to investors through email correspondence, text messages, and through a portal on the KS Cartel website made accessible to investors. The account balances that the Defendants provided reflected that the investors' investments were performing profitably. This was false, as the securities trading generated losses and much of the offering proceeds were diverted toward uses that could not have generated returns.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]

*Against All Defendants*

45. Plaintiff re-alleges and incorporates paragraphs 1 through 44 of this Complaint by reference as if set forth verbatim in this Claim.

46. By engaging in the acts and conduct alleged herein, Defendants, directly or indirectly, singly or in concert with others, in connection with the purchase or sale of securities, by use of the means or instrumentalities of interstate commerce, or by use of the mails, or of any facility of any national securities exchange, knowingly or severely recklessly:

   a. employed devices, schemes, and artifices to defraud; and/or

   b. made untrue statements of material facts, or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

      c. engaged in acts, practices, and courses of business which operated as a fraud or deceit upon purchasers, prospective purchasers, and other persons.

47. By reason of the foregoing, Defendants violated, and unless enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §§ 240.10b-5].

**SECOND CLAIM FOR RELIEF**
**Violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]**

*Against All Defendants*

48. Plaintiff re-alleges and incorporates paragraphs 1 through 44 of this Complaint by reference as if set forth verbatim in this Claim.

49. By engaging in the acts and conduct alleged herein, Defendants, directly or indirectly, singly or in concert with others, in the offer and sale of securities, by use of the means or instruments of transportation or communication in interstate commerce or by the use of the mails, have:

      a. knowingly or with severe recklessness employed a device, scheme, or artifice to defraud; and/or

      b. knowingly, recklessly, or negligently obtained money or property by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

      c. knowingly, recklessly, or negligently engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

50. By reason of the foregoing, Defendants have violated and, unless enjoined will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

### THIRD CLAIM FOR RELIEF
### Violations of Sections 5(a) and (c) of the Securities Act [15 U.S.C. §§ 77e(a) & (c)]

*Against All Defendants*

51. Plaintiff re-alleges and incorporates paragraphs 1 through 44 of this Complaint by reference as if set forth verbatim in this Claim.

52. By engaging in the conduct described herein, Defendants, directly or indirectly, singly or in concert with others:

    a. made use of the means or instruments of transportation or communication in interstate commerce or of the mails to sell, through the use or medium of written contracts, offering documents, prospectus, oral and written statements, or otherwise, securities as to which no registration statement was in effect; and/or

    b. made use of means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell, through the use or medium of written contracts, offering documents, prospectus, oral and written statements, or otherwise, securities as to which no registration statement had been filed.

53. By engaging in the conduct described above, Defendants have violated, and unless enjoined will continue to violate, Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and (c)].

### PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a judgment:

1.      Permanently enjoining the Defendants from violating Sections 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. §§ 77e(a) and (c) and 77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

2.      Permanently enjoining Defendants from directly or indirectly, including but not limited to, through any entity owned or controlled by Defendants, participating in the issuance, purchase, offer, or sale of any security; provided, however, that such injunction shall not prevent Defendants Silea and Kranenberg from purchasing or selling securities for their own personal accounts;

3.      Ordering the Defendants, jointly and severally, to disgorge ill-gotten gains as a result of the violations alleged herein, plus prejudgment interest on those amounts;

4.      Imposing civil penalties against the Defendants pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] for violations of the federal securities laws as alleged herein; and

5.      Imposing such other and further relief as the Commission may show itself entitled.

Dated:  November 5, 2020                    Respectfully submitted,

*s/Nikolay V. Vydashenko*
Nikolay V. Vydashenko
Texas Bar No. 24057029
United States Securities and Exchange Commission
Fort Worth Regional Office
801 Cherry Street, Suite 1900
Fort Worth, Texas 76102
(817) 900-2638 (phone)
(817) 978-4927 (facsimile)
vydashenkon@sec.gov

ATTORNEY FOR PLAINTIFF UNITED STATES
SECURITIES AND EXCHANGE COMMISSION

**CERTIFICATE OF SERVICE**

I affirm that on November 5, 2020, I caused the foregoing *First Amended Complaint* to be electronically filed with the Clerk of the Court for the Eastern District of Texas, Sherman Division, by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants. I further certify that on November 5, 2020, I caused the foregoing to be served by U.S. Mail and email to:

Jessica B. Magee
Thompson & Knight LLP
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Jessica.Magee@tklaw.com

                                                    *s/Nikolay V. Vydashenko*
                                                    Nikolay V. Vydashenko