UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

U.S. SECURITIES AND            §
EXCHANGE COMMISSION            §
                               §
v.                             §        CIVIL NO. 4:20-CV-737-SDJ
                               §
SEBASTIAN SILEA, ET AL.        §

## MEMORANDUM OPINION AND ORDER

The U.S. Securities and Exchange Commission ("Commission") brought this action against Defendants Sebastian Silea, Christian Kranenberg, and KS Cartel LLC ("KS Cartel") pursuant to the Securities Act of 1933 ("Securities Act") and the Securities Exchange Act of 1934 ("Exchange Act"). The case arises from Silea and Kranenberg's establishment of an entity through which they operated an investment scam that is, in large part, a Ponzi scheme—one that has caused several investors tens of thousands of dollars in losses.

Before the Court is the Commission's Motion for Summary Judgment Against Defendants Sebastian Silea and Christian Kranenberg and for Default Judgment Against Defendant KS Cartel LLC, (Dkt. #62). For the reasons that follow, the Court **GRANTS** the motion.

### I. BACKGROUND

#### A. Procedural Background

On September 29, 2020, the Commission brought suit against Defendants. (Dkt. #1). On November 5, 2020, the Commission filed its amended complaint against Defendants, stating claims for violations of: Section 10(b) of the Exchange Act,

15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5; Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a); and Sections 5(a) and (c) of the Securities Act, 15 U.S.C. §§ 77e(a) & (c). (Dkt. #9). Defendants, then represented by counsel, filed their answer on December 9, 2020. (Dkt. #11).

On May 28, 2021, Defendants' counsel moved to withdraw, citing Defendants' failure to pay legal fees. (Dkt. #19). After a hearing on the motion, (Dkt. #26), the Court granted counsel's motion on June 30, 2021, and ordered KS Cartel to obtain new counsel within thirty days, cautioning that entities are not permitted to proceed pro se in federal court. (Dkt. #27 at 2 (citing *Donovan v. Road Rangers Country Junction, Inc.*, 736 F.2d 1004, 1005 (5th Cir. 1984)). The Court further warned KS Cartel that if it failed to secure new counsel by the Court-ordered deadline, its defenses may be struck and it may be subject to default judgment. (Dkt. #27 at 2). The Court also ordered Silea and Kranenberg to obtain new counsel or inform the Court that they intended to proceed pro se by the same deadline. (Dkt. #27 at 2).

By September 1, 2021, no defendant had complied with the order. *See* (Dkt. #30). The Commission thus moved to strike the portion of Defendants' answer attributable to KS Cartel, (Dkt. #33), and for default judgment against KS Cartel, (Dkt. #34), both of which the Court granted, (Dkt. #55). The Court further ordered the Clerk to enter default against KS Cartel pursuant to Federal Rule of Civil Procedure 55(a), (Dkt. #55), and such default was entered on November 22, 2021, (Dkt. #60). Additionally, the Court construed Silea and Kranenberg's failure to obtain new counsel as notice that they intend to proceed pro se. (Dkt. #55 at 2).

During the same time frame, Defendants filed purported motions "to dismiss" and for "summary judgment," (Dkt. #41, #47),[1] which the Court denied, (Dkt. #56, #57).

On November 23, 2021, the Commission filed the instant Motion for Summary Judgment Against Defendants Sebastian Silea and Christian Kranenberg and for Default Judgment Against Defendant KS Cartel LLC, (Dkt. #62). Silea alone has filed documents that the Court construes liberally as his response to the motion. *See* (Dkt. #65, #66, #67). Neither KS Cartel nor Kranenberg responded.[2] The Commission filed a reply in support of its motion. (Dkt. #68). The Court will grant the Commission's motion.

## B. Factual Background

### i. Defendants' offers and sales of unregistered securities of KS Cartel

As set out in the KS Cartel "Confidential Private Placement Memorandum" ("PPM"), in July 2017, Silea and Kranenberg formed KS Cartel as a Texas limited liability company. (APP at 7).[3] From KS Cartel's inception through at least February of 2020 (the "Relevant Time Period"), KS Cartel's principal place of business was in Waco, Texas. (APP at 7). Silea and Kranenberg appointed themselves as Managing

---

[1] On November 19, 2021, the Court held a hearing on Defendants' motions, (Dkt. #54), during which the Court reminded Silea and Kranenberg that KS Cartel, as an entity, cannot proceed pro se in federal court, and that while Silea and Kranenberg can proceed pro se, the Court did not recommend it.

[2] Defendants have, however, filed a slew of incoherent motions in the interim. (Dkt. #69, #70, #71, #74, #75, #76). The Court will address those motions under separate order.

[3] The Commission filed an appendix via several exhibits attached to its motion. For consistency, the Court refers to the exhibits in the appendix with the "APP" designation.

Members of KS Cartel; Kranenberg was the Chief Executive Officer and Silea was the Chief Financial Officer. (APP at 7, 14). In these roles, Kranenberg and Silea each exercised control over KS Cartel.

From October 2017 through July 2020, Silea and Kranenberg raised approximately $1,044,918.52 from investors by offering and selling membership interests—"Units"—in KS Cartel for cash. The offers and sales of these Units were not registered with the Commission. (APP at 6).

Silea solicited investors by, among other means, approaching people he did not know in store parking lots and other locations. Kranenberg solicited investors by, among other means, communicating with people he did not know via the LinkedIn and Shapr networking platforms. Silea and Kranenberg also personally met with prospective investors to solicit their investments. Defendants offered and sold Units to investors in Texas, New Mexico, California, New York, and New Jersey, among other states. Many KS Cartel investors were not accredited.

Units of KS Cartel were a passive investment because investors relied solely on Defendants' efforts to obtain the investment returns that Silea and Kranenberg promised—investors had no right to participate in managing KS Cartel.

Silea and Kranenberg offered Units in KS Cartel pursuant to, among other means, the PPM, which Silea and Kranenberg provided to prospective investors when soliciting investments. According to the PPM, KS Cartel would use investor funds to, at the investor's election, either day-trade funds pooled from multiple investors through a so-called "mutual fund" or manage separate "private stock portfolios" for

individual investors. (APP at 8). KS Cartel and the investors would then split any profits from the trading, based on a percentage individually negotiated between KS Cartel and each investor.

### ii. Silea and Kranenberg controlled bank and brokerage accounts through which they operated KS Cartel

To operate KS Cartel, Silea and Kranenberg used bank and brokerage accounts. Silea and Kranenberg had access to and control over two bank accounts (the "KS Cartel Bank Accounts"), and they traded KS Cartel investor funds in at least four accounts (the "KS Cartel Brokerage Accounts"). (APP at 23, 29). Silea and Kranenberg traded securities in the KS Cartel Brokerage Accounts and transacted in the KS Cartel Bank Accounts.

### iii. Defendants' securities trading

The Commission's expert, Commission Financial Economist Judy Gia Tran, analyzed Defendants' trading in the KS Cartel Brokerage Accounts and in other accounts controlled by Defendants, for the period of March 2017 through June 2020.[4] Tran determined that trading in all of Defendants' brokerage accounts, including the KS Cartel Brokerage Accounts, generated gross realized losses of $72,811, or an overall return of -0.9%. (APP at 161–162).[5] In short, Defendants' overall trading was

---

[4] Tran's findings, which are based on generally accepted methodologies, are presented in detail in her Expert Report, dated April 21, 2021. (APP at 153–226). Tran analyzed brokerage statements and trade blotters produced to the Commission by brokerage firms at which Defendants maintained accounts to develop her report.

[5] The KS Cartel Brokerage Accounts account for 84% of Defendants' trading. (APP at 151). Defendants controlled two additional brokerage accounts, which are accounted for in the above calculation of returns. The returns were similar when only the KS Cartel Brokerage

not profitable. In most weeks and months, it resulted in small gains or small losses. Any small gains Defendants achieved from time to time were not sufficient for Defendants to distribute purported "profits" to investors.

### iv. Defendants' use of investor funds

Defendants raised approximately $1,044,918.52 in investor funds. (APP at 246). When investors invested money in KS Cartel, their funds were deposited into the KS Cartel Bank Accounts. During the Relevant Time Period, Defendants transferred $329,301 of investor funds from the KS Cartel Bank Accounts to the KS Cartel Brokerage Accounts—that is, Defendants deployed only 32% of investor funds toward trading in securities. (APP at 251).

Also during the Relevant Time Period, Defendants transferred from the KS Cartel Brokerage Accounts to the KS Cartel Bank Accounts $280,203.48. (APP at 251). By May 2020, all KS Cartel Brokerage Accounts had a zero, negative, or negligible balance. (APP at 245–46).

Between October 2017 and July 2020, Defendants transferred $978,735.51 from the KS Cartel Bank Accounts to investors. (APP at 246). A significant amount of the money that Silea and Kranenberg transferred to investors, which, as described below they represented were profits, was the principal invested by other investors—Ponzi payments. (APP 251–52). In fact, on several occasions,[6] Defendants had a negligible balance in the KS Cartel Bank Accounts, then deposited an investor's

---

Accounts are considered. The KS Cartel Brokerage Accounts generated gross realized losses of $58,563, or an overall return of -0.8%. (APP at 151).

[6] Many such instances are described in detail at (APP at 248 ¶ 19).

6

investment into the account, and immediately used a portion of that investment to pay purported profits to other investors. For example, on January 6, 2019, one KS Cartel Bank Account had a balance of $255.44. (APP at 248–49, 255). On January 7, 2019, an investor wired a $5,000 investment into this account. On that date, there were no other credits into this account, except a non-investment related credit of $2,000. The same day, Defendants transferred a total of $3,100 from this account to two other KS Cartel investors. Without the $5,000 investment, Defendants would not have been able to make the $3,100 in payments to other investors.

Silea and Kranenberg spent over $300,000 on expenses for their personal benefit during the Relevant Time Period, including the purchase of a luxury vehicle and purchases at retail stores. (APP at 251). Silea and Kranenberg used investor funds to pay for at least some of these expenses. (APP at 251).

### v. Defendants' materially false and misleading statements and deceptive conduct

#### a. Material misstatements about targeted and actual returns

Defendants represented in the PPM that returns on KS Cartel's "mutual fund" day-trading strategy "should be no less than 20% of total assets and investments a month," and that the returns on its "private stock portfolio" long-term trading strategy "should be maintained at 30% a month." (APP at 15).

Throughout the time that Defendants solicited investors via the PPM, they lacked a factual basis to project returns of 20-30% per month. During this time period, Defendants' average monthly return, when considering trading in all of their brokerage accounts, was -8.8%, and the median monthly return was -0.5%. (APP

at 161–62). Defendants never achieved a monthly return that was higher than 6.5%, except for a monthly return of 27.7% in April 2020, but this return generated a gain of only $323. (APP at 161–62, 180). Both of these monthly returns were outliers. Defendants never disclosed their actual returns. When considering trading in only the KS Cartel Brokerage Accounts, the results are nearly identical. *See* (APP at 151).

Kranenberg falsely represented KS Cartel's prior performance to prospective investors. In November 2017, Kranenberg told prospective investors that KS Cartel's "ROI is averaging 70-90% monthly." *See*, *e.g.*, (APP at 126, 128). In April 2018, Kranenberg told prospective investors that KS Cartel's "ROI averages 30-60% monthly depending on the amount of risk." (APP at 130). And in August 2019, Kranenberg told prospective investors that KS Cartel's "ROI can average from 20-30% a month depending on the amount of risk." (APP at 132).

All of these representations were false. As set forth above, Defendants did not achieve or average the stated trading returns.

### b. Material misstatements about, and deceptive conduct related to, the performance of the investments

Silea and Kranenberg deceived KS Cartel investors about the nature of the purported profits that KS Cartel paid out to investors and about the performance and profitability of KS Cartel's securities trading, both at the time they solicited investments and after investors made their initial investments.

The PPM represented that "[p]rofit after investment and trade of equities . . . will be redistributed as discussed with clients in negotiations." (APP at 8). Silea and

Kranenberg similarly confirmed to investors that money distributed to investors represented profits from trading activities. (APP at 229–231, 236).

As set forth above, KS Cartel did not achieve profits from trading. Nevertheless, Silea and Kranenberg caused KS Cartel to distribute money to investors on a regular basis. As explained above, these distributions to investors represented not KS Cartel's profits from trading, but rather, in many cases, the transfer of principal invested by certain investors to other investors.

Investors in KS Cartel have stated that if they knew that the money that KS Cartel distributed to them as supposed profits was money invested by other investors or was otherwise not sourced from trading activities, or that their own investments would be used for purposes other than trading in securities, they would not have invested. (APP at 230, 236).

Silea and Kranenberg also systematically deceived KS Cartel investors about the profitability of KS Cartel by providing investors with fictitious account balances. This conduct was pervasive and directed at nearly every investor in KS Cartel. For example, Kevin Volkert invested a total of $35,000 between April 2018 and June 2018. (APP at 237). In September 2018, Volkert withdrew $20,000 from his account. (APP at 237). By the end of 2018, Silea reported to Volkert that his account balance had grown to $136,874.22, which was the balance only for the high-risk trading strategy. (APP at 139). This balance reflected a six-month gain (July through December 2018) of $121,874 or a return of 812.495%. (APP at 252). Based on the 55-45 profit split in favor of Volkert, (APP at 235), KS Cartel would have had to achieve

an even higher return over six months to deliver the stated return. Thus, the actual investment gain implied by the account balance Silea provided is even larger. In truth, in the two KS Cartel Brokerage Accounts in which trading occurred in that period, the total loss was $14,194. (APP at 189, 191).[7]

Silea and Kranenberg did not keep accurate records of the account balances of KS Cartel investors. Because Silea and Kranenberg comingled all investor funds in the KS Cartel Brokerage Accounts and KS Cartel Bank Accounts, without any segregation, (APP at 88–89), and because they continued to accept new investments while at the same time paying out purported investment returns to existing investors, keeping track of each investor's personalized account balance would have required very sophisticated record keeping and partnership accounting practices to take into account, among other things, dilution and the allocation of the fund's profits and losses to each investor based on when such an investor joined the fund. Defendants have not produced any records that reflect they kept track of anything other than the money investors put in and took out. When Defendants were represented by counsel and were afforded time to construct their best response to the Commission's interrogatory asking Defendants to explain "how you accounted for gains, losses, distributions, and contributions attributable to each KS Cartel investor, including

---

[7] This is just one illustrative example of Silea and Kranenberg's deceptive statements to KS Cartel investors regarding fictitious account balances. The Commission provides several additional examples in their motion, detailing Silea and Kranenberg's use of email, text messages, and the KS Cartel website to convey fictitious account balances. (Dkt. #62 at 9–14).

such investors' capital account balances and changes thereto," Defendants provided only the following response:

> On behalf of the company, Defendant Silea maintained mental and written records of funds received by KS Cartel LLC and/or deposited, and took the percentage of the fund that an individual bought units for and formulated that as their total ownership percentage. Defendant Silea accounted for this percentage by the stocks held over a long period of time and the remainder that were traded based upon an individual's wishes.

(APP at 30).

Investors in KS Cartel have stated that if they had known that Silea and Kranenberg were providing fictitious performance figures that bore no relation to the results of KS Cartel's actual trading activity, they would not have invested additional funds with KS Cartel. (APP at 231–32, 237, 241).

The record shows that investors suffered significant harm when they were deceived by the investment performance information Silea and Kranenberg provided. For example, after seeing KS Cartel supposedly outperform his retirement investments for several months, investor Craig Muirhead made early withdrawals of tens of thousands of dollars from his 401K retirement account, after paying a significant early withdrawal penalty—on Kranenberg's advice—and invested the withdrawn cash with KS Cartel. (APP at 241). Muirhead ultimately suffered a loss of at least $50,000. (APP at 247–248). Similarly, investor Constantin Ispas invested $50,000 from his retirement savings after seeing several months of supposedly high returns on his initial investment. (APP at 231). He also suffered a loss of more than $50,000. (APP at 247–248).

### c. Material misstatements about the safety of investing in KS Cartel

Defendants represented in the PPM that KS Cartel offered investors a "50% return safety net other firms do not." (APP at 10). The PPM went on to explain that KS Cartel offered "a new and faster approach to making money at KS Cartel and a safety net guaranteed return on initial investment, making the company competitive." (APP at 10). Silea confirmed that these statements meant that the PPM provided a guarantee that KS Cartel would return at least 50% of an investor's initial investment. (APP at 108).

Silea and Kranenberg took no action to ensure that KS Cartel could make good on this guarantee. (APP at 103–105). When asked about what steps he took to ensure KS Cartel could deliver on this guarantee, Silea responded that it was "basically just not making bad investments." (APP at 103). Later, both Silea and Kranenberg asserted the Fifth Amendment privilege against self-incrimination when responding to questions on this topic. (APP at 49, 67–68).

Ultimately, many investors lost more than 50% of their principal investments. (APP at 247–48).

### d. Material misstatements about Silea and Kranenberg's qualifications

Defendants represented in the PPM that they were "highly qualified business and industry professionals." (APP at 13). They also touted their "expertise" as something that "set[s] the Company apart from its Competitors." (APP at 10).

12

Silea and Kranenberg were neither "highly qualified" nor "industry professionals." The also lacked expertise in securities trading. Prior to forming KS Cartel, Silea had completed one semester at Baylor University before dropping out, while Kranenberg had completed two semesters at a community college.

### vi. Silea and Kranenberg declined to testify, citing the Fifth Amendment

In 2020, during the Commission's investigation that preceded the filing of this lawsuit, Silea provided on-the-record testimony and at certain times refused to testify, citing the Fifth Amendment privilege. (APP at 90–91, 106–07).

During the course of the litigation, the Commission took Silea's and Kranenberg's depositions. At their depositions, both Silea and Kranenberg refused to answer nearly every substantive question asked of them on the basis of the Fifth Amendment privilege against self-incrimination. (APP at 41–52, 62–79).

## II. SUMMARY JUDGMENT AGAINST SILEA AND KRANENBERG

### A. Legal Standard

Summary judgment is only appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting FED. R. CIV. P. 56(a)). If the moving party presents a motion for summary judgment that is properly supported by evidence, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).

Because Federal Rule of Civil Procedure 56 requires that there be no "*genuine issue of material fact*" to succeed on a motion for summary judgment, "the mere existence of *some* alleged factual dispute" is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" when, under the relevant substantive law, its resolution might govern the outcome of the suit. *Id.* at 248. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Hamilton*, 232 F.3d at 476.

"Courts consider the evidence in the light most favorable to the nonmovant, yet the nonmovant may not rely on mere allegations in the pleading; rather, the nonmovant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial." *Int'l Ass'n of Machinists & Aerospace Workers v. Compania Mexicana de Aviacion, S.A. de C.V.*, 199 F.3d 796, 798 (5th Cir. 2000). If, when considering the entire record, the court concludes that no rational jury could find for the nonmoving party, the movant is entitled to summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

When ruling on a motion for summary judgment, the Court "will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy"—except when the facts are refuted in the

14

opposing party's brief in opposition to the motion, "as supported by proper summary judgment evidence." Local Rule CV-56(d). The Court "will not scour the record in an attempt to unearth an undesignated genuine issue of material fact." *Id.*

## B. Discussion[8]

### i. No genuine dispute as to any material fact

Defendants have failed to meaningfully respond to the Commission's motion. Silea individually filed three documents that the Court will liberally construe as responses to the Commission's summary-judgment motion. Silea filed a "Motion in opposition of default Judgment and Summary Judgement cease and desist," (Dkt. #65), a "Cease and Desist dismissal with prejudice," (Dkt. #66), and a "Silea Affidavi[t]," (Dkt. #67). Each filing is signed by Silea alone. All are largely unintelligible. And, unquestionably, none meets the requirements for a response to a summary-judgment motion. *See* Local Rule CV-56(b) ("Any response to a summary-judgment motion must include a response to the statement of issues and a response to the 'Statement of Undisputed Material Facts.'" . . . The response should be "supported by appropriate citations to proper summary judgment evidence.").

To the extent Silea intended these filings to be construed as motions seeking dismissal of this action on some basis, the motions, (Dkt. #65, #66), will be denied, as

---

[8] As discussed in Section III.B *infra*, whether there is a genuine issue of material fact as to KS Cartel's liability is relevant to the Court's default-judgment analysis. The Court will thus conduct the summary-judgment analysis as to all three defendants, although the Commission's summary-judgment motion, and the Court's grant of summary judgment, is only directed as to the two individual defendants.

the Court has already denied Defendants' purported motion for summary judgment and their purported motion dismiss, (Dkt. #56, #57).

The filings do not address the summary-judgment record, cite to any evidence, or identify any genuine issue of material fact.[9] Silea's "affidavit" is the only filing of the three that could be construed as summary-judgment evidence. *See* Local Rule CV-56(d). A single sentence therein relates to the Commission's claims: Silea asserts that KS Cartel investors "knew the risks," and "when I took money from anyone I made sure they could bear the entire loss and fully agreed to my trust." (Dkt. #67 at 1). "Needless to say, [these] unsubstantiated assertions are not competent summary judgment evidence." *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994) (citation omitted).

Similarly, neither Kranenberg nor KS Cartel filed a response addressing the Commission's summary-judgment motion.[10]

The Commission's motion is extensively supported by evidence. Silea and Kranenberg have plainly failed to meet their burden to "show with significant probative evidence that there exists a genuine issue of material fact." *Hamilton*, 232 F.3d at 477 (cleaned up). There is therefore no genuine dispute regarding any

---

[9] In the two filings termed "motions," Silea appears to re-argue irrelevant and incoherent assertions the Court addressed in previous orders. *See* (Dkt. #56, #57, #65, #66).

[10] The Court does not construe Silea's purported opposition filings on behalf of either Kranenberg or KS Cartel. *See SEC v. Meta 1 Coin Tr.*, No. 1:20-CV-273-RP, 2020 WL 1931852, at *3 n.4 (W.D. Tex. Apr. 21, 2020) (citing *Martin v. City of Alexandria*, 198 F. App'x 344, 346 (5th Cir. 2006)) ("While nonlawyer individual defendants may represent themselves in certain circumstances, they may not represent or assist in the self-representation of their codefendants."); *Donovan*, 736 F.2d at 1005 (entities are not permitted to proceed pro se in federal court).

material fact as to the Commission's claims against Silea, Kranenberg, or KS Cartel, and the Court will look solely to the facts listed in support of the motion, along with the record, when determining whether summary judgment is appropriate. *See Danos v. Union Carbide Corp.*, 541 F. App'x 464, 466 (5th Cir. 2013) (citations omitted) ("If a party fails to oppose a motion for summary judgment, then the district court is permitted to consider the facts listed in support of the motion as undisputed and grant summary judgment if those facts would entitle the movant to judgment as a matter of law."); *see also Eversley v. MBank Dall.*, 843 F.2d 172, 174 (5th Cir. 1988) (concluding that the district court properly accepted as undisputed the facts listed in a summary-judgment motion where the non-movant failed to submit any response to the motion); Local Rule CV-7(d) ("A party's failure to oppose a motion . . . creates a presumption that the party does not controvert the facts set out by movant and has no evidence to offer in opposition to the motion.").

### ii. Defendants offered and sold unregistered securities

Defendants' actions violated Sections 5(a) and 5(c) of the Securities Act because they raised more than one million dollars by selling securities without registering those securities offerings with the Commission. *See* 15 U.S.C. §§ 77e(a), (c). Because there is no genuine issue of material fact regarding these violations, the Court will grant summary judgment as to Silea and Kranenberg on the Commission's claims under Sections 5(a) and 5(c) of the Securities Act.

Under Section 5 of the Securities Act, it is "unlawful for any person, directly or indirectly" to use interstate commerce to offer to sell "any security" unless the person

17

has filed a "registration statement" for the security. 15 U.S.C. § 77e(c). To establish a prima facie violation of Sections 5(a) and 5(c) of the Securities Act, the Commission must show that "(1) no registration statement was in effect as to the securities, (2) the defendant sold or offered to sell these securities, and (3) interstate transportation or communication and the mails were used in connection with the sale or offer of sale." *SEC v. Cont'l Tobacco Co.*, 463 F.2d 137, 155 (5th Cir.1972). Section 5 violations are strict liability offenses that do not require proof of scienter. *Swenson v. Engelstad*, 626 F.2d 421, 424–25 (5th Cir.1980) ("The Securities Act of 1933 imposes strict liability on offerors and sellers of unregistered securities . . . . regardless of . . . any degree of fault, negligent or intentional, on the seller's part." (cleaned up)).

Once the Commission establishes its prima facie case, "the burden shifts to Defendant[s] to prove that the offer or sale falls under an exemption to the registration requirements." *SEC v. Kahlon*, 141 F.Supp.3d 675, 678–79 (E.D. Tex. 2015), *aff'd*, 873 F.3d 500 (5th Cir. 2017) (citing *Cont'l Tobacco Co.*, 463 F.2d at 156).

### a. No registration statement was in effect

First, it is undisputed that KS Cartel's securities were not registered with the Commission. The PPM itself stated that "[t]he securities offered hereby have not been registered under the Securities Act of 1933." (APP at 6).

### b. Defendants sold or offered securities

Second, it is undisputed that Defendants offered and sold Units in KS Cartel to investors. The "Units" are securities, which the Securities Act broadly defines "to

include a long list of financial instruments, including 'investment contracts.'" *SEC v. Arcturus Corp.*, 928 F.3d 400, 409 (5th Cir. 2019) (citing 15 U.S.C. § 77b(a)(1)).

The Supreme Court in *Howey* articulated a test for determining whether an investment contract qualifies as a security, and the Fifth Circuit has recognized that the test requires three elements: "(1) an investment of money; (2) in a common enterprise; and (3) on an expectation of profits to be derived solely from the efforts of individuals other than the investor." *Arcturus*, 928 F.3d at 409 (citing *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298–99, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946) and quoting *Williamson v. Tucker*, 645 F.2d 404, 417 (5th Cir. 1981)). Courts disregard "legal formalisms" when considering this test and instead "focus on the substance of the deal." *Id.* (citing *Reves v. Ernst & Young*, 494 U.S. 56, 61, 110 S.Ct. 945, 108 L.Ed.2d 47 (1990)). Even where contracts "superficially resemble private commercial transactions" and lack "the formal attributes of a security," they can still qualify as securities. *Id.* (quoting *Youmans v. Simon*, 791 F.2d 341, 345 (5th Cir. 1986)).

All of the *Howey* factors are met. There was an "investment of money" because KS Cartel investors paid cash to receive Units. And "commonality is evidenced by the fact that the fortunes of all investors [were] inextricably tied to the efficacy of" Defendants' efforts. *SEC v. Koscot Interplanetary, Inc.*, 497 F.2d 473, 479 (5th Cir. 1974). The Commission has established that commonality exists because Defendants pooled investors' money and used the funds to, among other things, trade securities, and the investors' returns depended on the success of Defendants' trading, which they explained to potential investors and in the PPM. (APP at 9, 11). And investors had

19

no right to participate in managing KS Cartel. Thus, the third requirement is also met, as investors had a reasonable expectation that profits would be derived solely from the efforts of individuals other than themselves.

Finally, it is beyond dispute that Defendants offered and sold the Units. Silea and Kranenberg, on behalf of KS Cartel, personally solicited investors to invest in KS Cartel. And, as stated in the PPM, KS Cartel itself "offer[ed] . . . Units." (APP at 8).

### c. Defendants offered and sold securities through interstate commerce

Third, Defendants used online networking platforms, email, and other means to solicit and communicate with potential investors. (APP at 112–15, 126–35). KS Cartel sold Units to investors in Texas, California, New Mexico, New York, New Jersey, and other states. (APP at 96). Therefore, it is beyond dispute that the Units were offered and sold through interstate commerce. *See SEC v. Carter*, No. 4:19-CV-100-SDJ, 2020 WL 6304889, at *4 (E.D. Tex. Oct. 28, 2020) (concluding that communicating with potential investors through email, obtaining investment from at least one out-of-state investor, and obtaining funds from investors through wire transfer constituted offering and selling securities through interstate commerce).

### d. Defendants have not established that an exemption from registration applies

Because the record before the Court establishes a prima facie Section 5 violation as asserted by the Commission, the burden of proof shifts to Defendants to establish that an exemption from registration applies. *See SEC v. Ralston Purina*

20

*Co.*, 346 U.S. 119, 124–26, 73 S.Ct. 981, 97 L.Ed. 1494 (1953). Defendants have failed to demonstrate that any exception or exemption applies here.

The PPM states that KS Cartel securities are not registered with the Commission, "in reliance upon the exemptions from registration provided by the [Securities] Act and Regulation D[,] Rule 506 promulgated thereunder," (APP at 6), referring to statutory exemptions to registration under the Securities Act ("Regulation D"). *See* 17 C.F.R. § 230.506; *see also* 15 U.S.C. § 77d(a)(2). In Silea's "motion" to "Cease and Desist Dismissal with Prejudice," Silea mentions a "Form D exception," but does not explain the exception or any reason that KS Cartel securities would be subject to it. (Dkt. #66). In Defendants' nine identical and largely incoherent documents filed more than a month after the Commission replied in support of its summary-judgment and default-judgment motion, Defendants state the following:

> Regulation D of Securities Act of 1933, Rule 506[:] This provides two distinct exemptions from registration. Rule 506(B) a "safe harbor" under Section 4(a)(2) this was never contested by the plaintiff, because we "satisfy certain requirements" of Rule 506(B) or (C), giving the same protections offered to corispondants [sic] by the Securities Act of 1[9]33.

*See, e.g.*, (Dkt. #76 at 5). Even construing this statement liberally as (1) responsive to the Commission's summary-judgment motion and (2) an argument that Rule 506 of Regulation D, 17 C.F.R. § 230.506, exempts KS Cartel securities from registration, Defendants have not come close to meeting their burden of proof that the exemption applies.[11]

---

[11] The Court also notes that Defendants' apparent contention that the Commission does not contest that an exemption applies is plainly wrong.

Regulation D "exempts an issuer who offers and sells restricted securities without general solicitation to a limited number of investors, as long as those investors are sophisticated enough to understand the merits and risks of the offering, and certain information is furnished to the investors." *SEC v. Stack*, No. 1:21-CV-00051-LY, 2021 WL 4777588, at *9 n.5 (W.D. Tex. Oct. 13, 2021) (citing *SEC v. Rose*, No. CV H-04-2799, 2007 WL 9826042, at *20 (S.D. Tex. Sept. 5, 2007)).

There are numerous requirements an issuer must meet to qualify for an exemption from registration pursuant to Regulation D under Rule 506(b) or 506(c). *See* 17 C.F.R. § 230.506. Any proof Defendants may have offered for this argument would had to have been "explicit, exact, and not built on conclusory statements." *Cont'l Tobacco*, 463 F.2d at 156 (5th Cir. 1972) (cleaned up). Nowhere in the record, much less in response to the Commission's motion, have Defendants offered any facts or proof to support an argument that a Regulation D exemption applies.

\* \* \* \*

For all of these reasons, the Commission is entitled to summary judgment on its claim that Silea and Kranenberg's actions violated Sections 5(a) and 5(c) of the Securities Act.

### iii. Defendants defrauded investors

Defendants made material misstatements and omissions to further a deceptive scheme that raised more than one million dollars from unwitting investors. Because there is no genuine issue of material fact regarding Silea and Kranenberg's fraud, the Court will grant summary judgment on the Commission's claims under Section 17(a)

of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

### a. Defendants' liability under Section 10(b), Rule 10b-5(b) thereunder, and Section 17(a)(2)

Rule 10b-5(b) of the Exchange Act prohibits any person from making "any untrue statement of a material fact" or omitting "to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading," in connection with the purchase or sale of a security. 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5(b).

For purposes of Rule 10b-5(b), "the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142, 131 S.Ct. 2296, 180 L.Ed.2d 166 (2011). Section 17(a)(2) of the Securities Act prohibits any person, in the offer or sale of a security, from "obtain[ing] money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading[.]" 15 U.S.C. § 77q(a)(2). Proof of scienter is required for Rule 10b-5(b), whereas negligence is sufficient for Section 17(a)(2). *Aaron v. SEC*, 446 U.S. 680, 691, 697, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980).

The record shows that Silea and Kranenberg personally made multiple material misstatements to investors and prospective investors regarding each of their professional and educational backgrounds, the targeted and actual returns resulting

from KS Cartel trading, the performance of the investments, and their use of investor funds. Specifically, their material misstatements include: Defendants' statement in the PPM that returns using their trading strategy "should be" 20-30% per month, (APP at 15); Kranenberg's misrepresentations to prospective investors that KS Cartel was "averaging" a monthly return on investment ranging from 20-90%, (APP at 126, 128), though he knew KS Cartel was operating at a loss; Defendants' statement in the PPM, and verbal statements Silea and Kranenberg made to investors, that money that KS Cartel distributed to investors represented profits from Defendants' trading activity, (APP at 8, 229–231, 236), though many of the distributions were Ponzi payments; the fictitious account balances that Silea and Kranenberg provided to investors that far exceeded the accounts' actual values, *see*, *e.g.*, (APP at 252 ¶ 28 (Defendants falsely represented to an investor that his six-month account balance reflected an 812% gain)); Defendants' statement in the PPM that they would guarantee investors a "safety net" that protected 50% of an investor's principal investment under any circumstances, (APP at 10); and Defendants' misrepresentation in the PPM that Silea and Kranenberg were "highly qualified business and industry professionals" who had "expertise" that set KS Cartel apart from competition, (APP at 10, 13), though both were college drop-outs and neither had industry expertise.

Silea and Kranenberg, together with KS Cartel, were the makers of the misstatements in KS Cartel's PPM because they had ultimate authority over its content. (APP at 23, 24, 29, 32). With respect to the misstatements made specifically

by either Silea or Kranenberg, KS Cartel is also a maker of each of those misstatements because Silea and Kranenberg made these misstatements in their capacity as control persons of KS Cartel. *See Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 366 (5th Cir. 2004) ("Statements attributed to individual defendants are also treated as having been made by [the company], as all of them appear. . . to have been made pursuant to their positions of authority within the company.").

Defendants thus violated Rule 10b-5(b). As a result of this conduct, Defendants received investor funds and went on to misappropriate a significant portion of them. In so doing, Silea and Kranenberg obtained money by means of their misrepresentations in violation of Section 17(a)(2).

The standard for misrepresentation is "whether the information disclosed, understood as a whole, would mislead a reasonable potential investor," and a "statement or omitted fact is material if there is a substantial likelihood that a reasonable investor would consider the information important in making a decision to invest." *SEC v. Provident Royalties, LLC*, No. 3:09-CV-01238-L, 2013 WL 5314354, at *4 (N.D. Tex. Sept. 23, 2013) (quoting *SEC v. Seghers*, 298 F.App'x 319, 328 (5th Cir. 2008)). As the Supreme Court has explained, an omitted fact is material if "disclosure of the omitted fact would have . . . significantly altered the 'total mix' of information made available." *Basic Inc. v. Levinson*, 485 U.S. 224, 232, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988) (citation omitted). Thus, the antifraud provisions of the securities statutes and regulations impose a "'duty to disclose material facts that are

necessary to make disclosed statements, whether mandatory or volunteered, not misleading.'" *SEC v. Fehn*, 97 F.3d 1276, 1290 n.12 (9th Cir. 1996) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 504 (9th Cir. 1992)).

All of the misstatements identified above were material to investors, as the Commission has presented uncontroverted evidence that investors would not have invested if Silea and Kranenberg had told them: what KS Cartel's actual and projected returns were; whether the purported profits they were receiving actually came from trading activity; whether KS Cartel in fact offered a "safety net" for investors; that Silea and Kranenberg used some investor funds for personal spending; and that Silea and Kranenberg lied to them about their professional and educational accomplishments. *See* (APP at 230, 236). At a minimum, such misstatements and omissions would have "significantly altered the total mix of information" available to any reasonable investor and were therefore material. *Levinson*, 485 U.S. at 232.

As to the remaining elements of the Commission's antifraud claims against Defendants, the record establishes that all of Defendants' misstatements, omissions, and deceptive conduct had the same goal: to obtain capital from investors. Accordingly, this element of securities fraud has been satisfied in this case.

The scienter element is also met. Scienter is defined as a "mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). In the Fifth Circuit, scienter is established by showing that a defendant acted intentionally or with severe recklessness. *See Southland*, 365 F.3d at 366 (citation omitted) (concluding that

scienter is an "'intent to deceive, manipulate, or defraud' or 'that severe recklessness' in which the 'danger of misleading buyers or sellers . . . is either known to the defendant or so obvious that the defendant must have been aware of it'"). Severe recklessness is "limited to those highly unreasonable omissions or misrepresentations" involving an "extreme departure from the standards of ordinary care[.]" *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 408 (5th Cir. 2001) (citation omitted).

Here, Silea and Kranenberg repeated known untruths and omitted critical information about the investments and intentionally defrauded investors, raising more than one million dollars as a result. Such conduct, on its face, was intentional, or, at the very least, severely reckless. And the evidence of scienter against Silea and Kranenberg is reinforced by the adverse inference to be drawn from their repeated invocation of the Fifth Amendment right against self-incrimination during their depositions. *See* (APP at 41–52, 62–79); *Farace v. Indep. Fire Ins. Co.*, 699 F.2d 204, 210 (5th Cir. 1983) (citation omitted) (explaining that, "while a person may refuse to testify during civil proceedings on the ground that his testimony might incriminate him . . . his refusal to testify may be used against him in a civil proceeding").

### b. Defendants' liability under Rules 10b-5(a), (c) and Sections 17(a)(1), (3)

Section 10(b) of the Exchange Act and Rules 10b-5(a) and (c) prohibit any person from employing "any device, scheme, or artifice to defraud" or engaging in any "act, practice, or course of business" which operates as a fraud or deceit, in connection with the purchase or sale of a security. 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5(a), (c).

Similarly, Sections 17(a)(1) and 17(a)(3) of the Securities Act prohibit any person, in the offer or sale of a security, from employing "any device, scheme, or artifice to defraud" or engaging in any "transaction, practice, or course of business" which operates as a fraud or deceit. 15 U.S.C. § 77q(a)(1), (a)(3). Proof of scienter is required for Rules 10b-5(a) and (c) and Section 17(a)(1), whereas at least negligence is sufficient for Section 17(a)(3). *Aaron*, 446 U.S. at 691, 697.

Defendants' actions demonstrate a course of conduct designed to deceive and defraud investors. This course of conduct included, among other things, making the material misrepresentations set forth above, which, in addition to violating Section 17(a)(2) and Rule 10b-5(b), also constitute violations of Section 17(a)(1) and (3) and Rule 10b-5(a) and (c). *See Lorenzo v. SEC*, 139 S.Ct. 1094, 1100, 1101–02, 203 L.Ed.2d 484 (2019) (holding that knowing dissemination of misrepresentations with an intent to deceive violates Rule 10b-5(a) and (c) and Section 17(a)(1)); *see also Malouf v. SEC*, 933 F.3d 1248, 1260 (10th Cir. 2019) (applying *Lorenzo* to Section 17(a)(3) because it "is virtually identical to Rule 10b-5(c)").

As described herein, the account statements Defendants sent to investors were steeped in deception—as were Defendants' Ponzi payments to earlier investors that used money received from new investors, rather than from returns from the underlying investments.

In short, Defendants intentionally made and disseminated various materially false statements and conducted deceptive business practices. In so doing, Defendants employed a "device, scheme, or artifice to defraud," in violation of Rule 10b-5(a) and

Section 17(a)(1), and engaged in an "act, practice, or course of business" that "operated as a fraud or deceit" on investors under Rule 10b-5(c) and Section 17(a)(3).

* * * *

For all of these reasons, the Commission is entitled to summary judgment on its claims that Silea and Kranenberg's actions violated Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder

### III. DEFAULT JUDGMENT

### A. Legal Standard

Federal Rule of Civil Procedure 55 sets forth certain conditions under which default may be entered against a party, as well as the procedure to seek the entry of default judgment. FED. R. CIV. P. 55. The Fifth Circuit requires a three-step process for securing a default judgment. *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). First, a default occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules of Civil Procedure. FED. R. CIV. P. 55(a); *New York Life Ins.*, 84 F.3d at 141. Next, an entry of default may be entered by the clerk when the default is established. FED. R. CIV. P. 55(a); *New York Life Ins.*, 84 F.3d at 141. Third, a plaintiff may then apply to the clerk or the court for a default judgment after an entry of default. FED. R. CIV. P. 55(b); *New York Life Ins.*, 84 F.3d at 141.

Rule 55(b)(2) grants a district court "wide latitude," and the entry of default judgment is left to the sound discretion of the trial court. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993); *see also Lindsey v. Prive Corp.*, 161 F.3d 886, 893

(5th Cir. 1998). A defendant, by his default, admits a plaintiff's well pleaded allegations of fact. *Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975) (citation omitted).

In determining whether to enter a default judgment, courts utilize a three-part analysis: "1) whether the entry of default judgment is procedurally warranted, 2) whether a sufficient basis in the pleadings based on the substantive merits for judgment exists, and 3) what form of relief, if any, a plaintiff should receive." *Graham v. Coconut LLC*, No. 4:16-CV-606, 2017 WL 2600318, at *1 (E.D. Tex. June 15, 2017) (citing, among others, *Lindsey*, 161 F.3d at 893).

## B. Discussion

On November 19, 2021, the Court concluded that KS Cartel was in default and ordered the Clerk to enter default against it due to KS Cartel's failure to obtain counsel after being so ordered, resulting in its pleadings and defenses being stricken, and thus its failure to defend. (Dkt. #55 (citing *Henderson v. Fenwick Protective Inc.*, No. 3:14-CV-505-M-BN, 2015 WL 3439166, at *1 (N.D. Tex. May 28, 2015) (concluding that a defendant-entity not represented by counsel was in default, striking the answer of the entity, ordering entry of default against the entity, and ordering the plaintiff to move for default judgment against the entity))). On November 22, 2021, the Clerk entered default against KS Cartel. (Dkt. #60).

The Court must first consider whether the entry of default judgment is appropriate. *See Lindsey*, 161 F.3d at 893. Factors relevant to this inquiry include:

> [i] whether material issues of fact are at issue, [ii] whether there has been substantial prejudice, [iii] whether the grounds for default are

clearly established, [iv] whether the default was caused by a good faith mistake or excusable neglect, [v] the harshness of a default judgment, and [vi] whether the court would think itself obliged to set aside the default on the defendant's motion. *Id.*

As established herein, there are no material issues of fact regarding KS Cartel's violation of Section 10(b) of the Exchange Act, Rule 10b-5 thereunder, Section 17(a) of the Securities Act, and Sections 5(a) and (c) of the Securities Act.[12] There is therefore no question that the Commission has a claim for relief. The grounds for default against KS Cartel are clearly established: the entity failed to retain counsel after being ordered to do so by the Court and after being clearly warned that should it not retain counsel, its filings were subject to being stricken and it would be subject to default. (Dkt. #27, #55). Therefore, KS Cartel's failure to obtain counsel—and thus its default—was not caused by a good faith mistake or excusable neglect, and there has been no "substantial prejudice" to KS Cartel in these proceedings. As a result of KS Cartel's violations of the Securities Act and the Exchange Act and the grounds for default against KS Cartel being clearly established, granting default judgment is not unduly harsh, and the Court would not think itself obliged to set aside the default on the defendant's motion. *See Manion v. Green*, No. 4:12-CV-222, 2014 WL 261203, at *4 (E.D. Tex. Jan. 23, 2014), *report and recommendation adopted*, 2014 WL 12585771 (E.D. Tex. March 28, 2014) (recommending default judgment be entered against entity-defendant that failed to retain counsel).

---

[12] KS Cartel's violations of these provisions are clear based on the Court's analysis of all Defendants' actions as described in Sections I–II *supra.*

Second, the uncontroverted allegations in the First Amended Complaint, (Dkt. #9), as well as the facts conclusively established and set forth in Sections I–II *supra*, establish that KS Cartel is liable for violating Section 10(b) of the Exchange Act, Rule 10b-5 thereunder, Section 17(a) of the Securities Act, and Sections 5(a) and (c) of the Securities Act. There is thus a sufficient basis in the pleadings to enter default judgment.

Third, the Commission explained in its motion that if the Court grants the motion, the Commission will move for remedies against Defendants. (Dkt. #62 at 30 n.6). The Commission is thus directed to submit its proposed form of default judgment against KS Cartel within fourteen days of this Order for the Court's consideration and entry.

## IV. CONCLUSION

For the foregoing reasons, the Court **ORDERS** that the Commission's Motion for Summary Judgment Against Defendants Sebastian Silea and Christian Kranenberg, (Dkt. #62), is **GRANTED**. The Court further **ORDERS** that the Commission's Motion for Default Judgment Against Defendant KS Cartel LLC, (Dkt. #62), is **GRANTED**.

The Commission is **ORDERED** to move for its proposed remedies against Silea and Kranenberg and for its proposed form of default judgment against KS Cartel within **fourteen days** of this Order for the Court's consideration and entry.

Additionally, Defendant Silea's motions purportedly filed in response to the Commission's motion, (Dkt. #65, #66), are **DENIED**.

**So ORDERED and SIGNED this 27th day of January, 2022.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE